IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-03302-M

LAWANDA SNEAD, Administrator of the )
Estate of William Surles, )
 )
        Plaintiff, )
 )     ORDER
v. )
 )
ERIC JASON MORRIS, et al., )
 )
        Defendants. )

On December 18, 2024, Lawanda Snead ("plaintiff"), Administrator of The Estate of William Surles ("Surles" or "decedent"), filed a counseled civil rights case arising out of Surles' death. See Compl. [D.E. 1]. On February 28, 2025, defendant Gary Clifton McNeill ("McNeill") filed a motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), Mot. [D.E. 17], with a memorandum in support, [D.E. 18], and defendants answered the complaint, see Answer [D.E. 19]. On March 20, 2025, plaintiff filed a response in opposition to the motion to dismiss. [D.E. 28]. On April 17, 2025, McNeill filed a reply. [D.E. 33]. As discussed below, McNeill's motion is granted in part and denied in part.

Plaintiff's Complaint:

Plaintiff names as defendants: Eric Jason Morris; Daniel Edward Pearson, Jr.; Cleon Hall; Daeshawn Lewis Smith; McNeill, in both his individual capacity and his official capacity; Harnett County Sheriff Wayne Coats, in both his individual capacity and his official capacity; and Travelers Casualty and Surety Company of America as Surety for the Sheriff of Harnett County (the "Surety Company"). See Compl. [D.E. 1] at ¶¶18–81.

The action centers around the December 19, 2022, beating death of 64-year-old Surles at the Harnett County Jail ("the Jail"), in the B-Block segregation unit, cell 130, at the hands of his 26-year-old cellmate Devonte Headen ("Headen"). See Compl. [D.E. 1] at ¶¶1, 3, 121.

Plaintiff alleges, *inter alia*, that: Surles was booked at the Jail on November 29, 2022, to serve the final 30 days of a prior sentence for a probation violation; the B-Block segregation unit has 24 cells with single beds and is used to house inmates who cannot be housed within the general population due to either medical or behavioral issues; Surles was in the B-Block due to his medical needs, including Type II diabetes, not due to behavioral concerns or violent or aggressive behavior; Surles resided alone in cell 130 from December 6, 2022, when he was transported for outside medical care for an infected toe that doctors then amputated; Surles remained hospitalized until December 12, 2022, was booked back into the Jail on December 13, 2022, and was placed back in B-Block, cell 130; due to the amputation, Surles' foot was bandaged and booted, he could not walk properly, and he required regular medication and medical attention. See id. at ¶¶82–90.

As to Headen, plaintiff alleges that: Headen was booked at the Jail circa March 4, 2022, after being arrested on charges of felony assault by strangulation and misdemeanor assault on a female; Headen had an extensive criminal history including a prior felony conviction for robbery with a dangerous weapon; Headen had significant mental health diagnoses and symptoms at that time including, *inter alia*, schizophrenia, bipolar type schizoaffective disorder, auditory and visual hallucinations, psychotic symptoms, volatile and antisocial behavior, extreme irritability, agitation, impulsivity, paranoia, physical aggression, and proneness to violence; Headen had numerous episodes of extreme and unprovoked violence against both Jail inmates and personnel which often resulted in Headen being moved to B-Block "lockdown" for 30 days; Jail personnel

2

moved Headen between units and cells many times with several periods of "lockdown"; circa December 15, 2022, Headen, still on "lockdown" status, was moved from B-Block cell 277 into B-Block cell 130 with Surles; and, despite no provocation from Surles, Headen brutally beat Surles to death in cell 130 "in the early morning hours of December 19, 2022." See id. at ¶¶92–122.

Plaintiff also alleges: defendants knew Surles was particularly vulnerable to attack due to his age, health conditions, and mobility limits due to his recent surgery; defendants knew Headen had an extensive violent criminal record; defendants knew Headen was mentally ill, unstable, and prone to extreme and unprovoked violence to include repeated assaults on correctional officers and inmates resulting in severe injuries; the Jail had a "known and pervasive custom, pattern and practice of inadequate security and violence"; defendants knew of these dangerous conditions, but failed to reasonably act to ensure the safety of vulnerable inmates; defendants Hall and Smith "authorized, ordered, instructed, approved of, and/or supervised" the transfer of Headen to Surles's cell on December 15, 2022; at that time, there were many cell vacancies in the B-Block, including 12 cells with only one inmate and one empty cell, and defendants knew that Headen could have been moved to other cells or that other inmates could have been moved to Surles' cell; no condition required defendants to move Headen into Surles' cell, but they did so despite knowing Headen posed a substantial risk of serious harm to Searles; defendants Morris and Pearson were on duty during the overnight hours of December 18, 2022, and were responsible for conducting B-Block "check-ins" which they failed to do adequately; on the morning of December 19, 2022, defendant Smith failed to check on Surles' well-being; and, if defendants had not placed Headen in Surles' cell or allowed Headen to remain in Surles' cell, Surles' death would have been prevented. See id. at ¶¶ 2, 4, 22, 31, 40, 50, 91, 95–97, 100–01, 107–11, 114–120, 124, 126–31.

3

As to McNeill, plaintiff specifically alleges, *inter alia*, that: McNeill served as a Major with the Harnett County Sheriff's Office and was responsible for operations, policies, procedures, and conduct at the Jail; McNeill was responsible for monitoring the location and cell assignments of inmates within the jail and was authorized to approve movement of, or to move, inmates to different cells; McNeill, under the authority of Sheriff Coats, was working at the Jail in a supervisory capacity at the time of Surles' incarceration and death; his position gave McNeill authority over defendants Morris, Person, Hall, and Smith; at relevant times, McNeill acted in accordance with Sheriff Coats' custom or practice of inadequate security and deliberate indifference to the safety of Jail inmates from inmate-on-inmate violence; McNeill is sued in his individual capacity under § 1983 for deliberate indifference to the risk of serious harm to Searls and as a supervisory defendant; McNeill is sued in his official capacity under § 1983 for inadequate training of detention officers at the Jail as to inmate security, placement, and supervision especially as applied to inmates known to be mentally ill, unstable, or prone to extreme and unprovoked violence; and McNeill knew of, and could have reasonably foreseen, that his conduct, and that of other Jail personnel, created a substantial risk of serious harm to Searles. See id. at ¶¶55–66.

As a first cause of action, under § 1983, plaintiff asserts that McNeill and other defendants were deliberately indifferent to a substantial risk of serious harm to Surles because they knew Surles was especially vulnerable, that Headen was prone to extreme violence toward other inmates, and that placing Headen in Surles' cell without regular check-ins by staff was an unreasonable response to this known risk of inmate-on-inmate violence against Surles. See id. at ¶¶152–168.

As a second cause of action, under § 1983, plaintiff asserts supervisory liability claims against Sheriff Coats and McNeill in their individual capacities as supervisors. Id. at ¶¶169–180.

4

As a third cause of action, under § 1983, plaintiff argues the Jail had inadequate policies, procedures, and customs in place to protect vulnerable inmates and inadequately trained employees to supervise dangerous, mentally ill, and violent inmates, making McNeill and Sheriff Coats liable under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978) ("Monell"). Id. at ¶¶181–91.

As a fourth cause of action, plaintiff argues that Sheriff Coats and the Surety Company are liable under N.C. Gen. Stat. § 58-76-5 for the unlawful acts and omissions against Surles committed by defendants McNeill, Morris, Pearson, Hall, and Smith. Id. at ¶¶192–97.

As a fifth cause of action, against defendants in their official and individual capacities, plaintiff asserts of negligence, gross negligence, and willful or wanton conduct. Id. at ¶¶198–211.

For relief, plaintiff seeks declaratory relief, compensatory damages, punitive damages, court costs and attorney fees, interest, a jury trial, and any further just and proper relief. Id. at 56.

### Arguments:

In support of his motion, McNeill generally argues that: the complaint lacks specific factual allegations; he is entitled to qualified immunity and dismissal of the individual capacity claims; the official capacity claims are redundant and duplicative; the state-law claims are insufficiently alleged; and he is entitled to public officers' immunity. See McNeill Mem. [D.E. 18] at 5–14.

In response, plaintiff generally argues that: the use of collective allegations against multiple defendants is appropriate; the individual capacity claims against McNeill are supported by plausible allegations; plaintiff plausibly alleged McNeill's deliberate indifference to a substantial risk of serious harm to Surles, which reasonable inferences support; plausible allegations support the supervisory liability claims against McNeill; McNeill is not shielded by qualified immunity because plaintiff has plausibly alleged McNeill's violation of Surles' clearly established Eighth

5

Amendment rights; plaintiff's Monell claim against McNeill is not duplicative; and plaintiff's state-law negligence claims against McNeill are plausible. See Pl.'s Resp. [D.E. 28] at 12–30.

In reply, McNeill reiterates arguments that the official capacity claims are redundant, he is entitled to qualified immunity, and the state-law claims also fail. See McNeill Reply [D.E. 33].

Legal Standard:

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012).

To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted). The court need neither accept a complaint's legal conclusions drawn from the facts, see id. at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quotation omitted). The court, however, accepts as true the complaint's well-pleaded factual allegations and construes these allegations, and the reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

Discussion:

1) Plaintiff's § 1983 claims against McNeill in his individual capacity:

McNeill generally argues that plaintiff fails either to state a viable supervisory liability claim or to plausibly allege that McNeill acted personally in failing to protect Surles from Headen.

6

As noted above, however, plaintiff alleges defendants knew that Headen was mentally ill and had a significant history of violent acts against officers and other inmates, and that Surles was uniquely vulnerable due to his age and medical conditions. Plaintiff also alleges, although no condition required defendants to move Headen into Surles' cell, defendants did so despite knowing that Headen's propensity for violence posed a substantial risk of serious harm to Searles.

Here: 1) the pleading presents enough facts to raise a reasonable expectation that discovery will reveal evidence needed to establish the precise role of each defendant's involvement in the events alleged, see Twombly, 550 U.S. at 556; 2) the subjective prong of the deliberate indifference claims may be proved by inference from circumstantial evidence that McNeill was aware of a substantial, obvious risk of inmate-on-inmate violence from moving Headen into Surles' cell, and allowing Headen to remain, but that McNeill unreasonably failed to protect Surles from that risk, see Raynor v. Pugh, 817 F.3d 123, 127–28 (4th Cir. 2016); Makdessi v. Fields, 789 F.3d 126, 133, 135–36 (4th Cir. 2015); and 3) plaintiff also plausibly alleges a supervisory liability claim against McNeill under the governing standard, see Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

As to McNeill's qualified immunity argument, a government official is entitled to qualified immunity when 1) plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). As noted above, however, plaintiff plausibly alleges that McNeill violated Surles' clearly established Eighth Amendment right to be free from deliberate indifference by Jail officials to a substantial, obvious risk of inmate-on-inmate violence. See Farmer v. Brennan, 511 U.S. 825, 333–34 (1994). Thus, McNeill's qualified immunity argument presently fails, but he may reassert this argument on a more developed record.

In sum, drawing all reasonable inferences in the favor of plaintiff, plaintiff's § 1983 failure-to-protect claims against McNeill in his individual capacity, on either a direct or supervisory liability theory, survive this motion to dismiss. Thus, the court DENIES this aspect of the motion.

2) Plaintiff's official capacity claims against McNeill:

Although plaintiff alleges official capacity claims against Sheriff Coats, McNeill, and the other named officers, such claims are "treated as a claim against the government entity of which the official is an agent." Jones v. Houston, No. 4:08-CV-121-F, 2010 WL 3835147, at *6 (E.D.N.C. Sep. 28, 2010) (citing Kentucky v. Graham, 473 U.S. 159, 165–66 (1985)).

Where, as here, "a plaintiff asserts multiple official capacity claims against defendants who are agents of the same government entity, the plaintiff effectively names the same defendant twice." Benbow v. Ingram, No. 7:23-CV-292-M, 2024 WL 2964099, at *6 (E.D.N.C. May 8, 2024) (citing White v. White, No. 5:19-CV-467-BO, 2021 WL 2345352, at *2 (E.D.N.C. June 8, 2021)), report and recommendation adopted, No. 7:23-CV-00292-M, 2024 WL 3073727 (E.D.N.C. June 20, 2024).

Thus, because both Sheriff Coats and McNeill are agents of the Office of Sheriff of Harnett County, the court GRANTS IN PART this aspect of McNeill's motion to dismiss and dismisses the "duplicative" official capacity claims against McNeill. See id.

3) Plaintiff's state-law claims against McNeill:

Under North Carolina law, a "sheriff and his deputies are liable for their negligence which results in an injury to a prisoner." Ramsey v. Schauble, 141 F. Supp. 2d 584, 591 (W.D.N.C. 2001) (citations omitted). "A sheriff may be held liable for the acts of his subordinates under *respondeat superior*." Id. (citation omitted).

8

Plaintiff alleges, *inter alia*, that: each defendant made the intentional decision to disregard Surles' rights to be free from the severe safety risks posed by Headen being moved to Surles' cell; defendants' actions amount to willful or wanton conduct; as a direct and proximate cause of defendants' negligence, gross negligence, reckless, and willful or wanton conduct, Surles was vulnerable and unnecessarily exposed to the risks posed by Headen who brutally beat Surles to death; and defendants' acts and omissions were done willfully, wantonly, and "in a manner that demonstrates reckless disregard for" Surles' rights. See Compl. [D.E. 1] at ¶¶200–211.

Succinctly stated, plaintiff's claims of negligence, gross negligence, and willful or wanton conduct are sufficient to survive McNeill's instant motion to dismiss. But see Gonzalez v. Bennett, No. 5:24-CT-3139-FL, 2025 WL 818556, at *11–13 (E.D.N.C. Mar. 13, 2025) (citing, *inter alia*, Knibbs v. Momphard, 30 F.4th 200, 226 (4th Cir. 2022), and discussing the interplay between common law tort claims and North Carolina's survivorship and wrongful death statutes).

The court now turns to McNeill's assertion that he is entitled to public officers' immunity.

> Under this doctrine, public officers or officials may not be held liable for negligence "in the performance of their governmental or discretionary duties." Meyer v. Walls, 347 N.C. 97, 112 (1997). Thus, a public officer may be liable in his individual capacity only when he is 1) malicious, 2) corrupt, or 3) acting outside of or beyond the scope of his duties. Id. A public officer "acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial and injurious to another." Grad v. Kaasa, 312 N.C. 310, 313 (1984). An act is "wanton" where "it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id. However, there is a general presumption "that a public official in the performance of his official duties acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." In re Annexation Ordinance No. 300-X, 304 N.C. 549, 551(1981) (internal citation omitted).

Morgan v. Spivey, No. 5:16-CV-365-FL, 2017 WL 4399539, at *9 (E.D.N.C. Sept. 29, 2017).

9

Because, as discussed above, McNeill presently is not entitled to qualified immunity, he likewise is not now entitled to public officers' immunity. See Cooper v. Sheehan, 735 F.3d 153, 160 (4th Cir. 2013) ("An officer acts with malice when he 'does that which a man of reasonable intelligence would know to be contrary to his duty,' i.e., when he violates a clearly established right." (quoting Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003)); Bailey, 349 F.3d at 742 (noting North Carolina public officers' immunity is "unavailable to officers who violate clearly established rights").

Thus, the court DENIES McNeill's motion to dismiss as to plaintiff's state-law claims.

### Conclusion:

For the above reasons, the court GRANTS IN PART the motion to dismiss [D.E. 17], but only as to plaintiff's "duplicative" official capacity claims against McNeill. The court DENIES the remainder of the motion.

SO ORDERED this 18th day of September, 2025.

*Richard E Myers II*
RICHARD E. MYERS II
Chief United States District Judge

10

Case 5:24-ct-03302-M    Document 40    Filed 09/18/25    Page 10 of 10